REQUESTED BY: Allen L. Curtis, Executive Director, Nebraska Commission on Law Enforcement and Criminal Justice
QUESTIONS: 1. Does Neb. Rev. Stat. § 29-2261 prohibit the release of information from the legislatively required Homicide Study that discloses material found within an offender's presentence investigation report?
 2. May the Commission place the Homicide Study's data files, which include offender-specific data from presentence reports, in a public archive service so that other researchers can duplicate the study?
CONCLUSIONS: 1. If some of the content to be disclosed was derived from the presentence report and such material is linked to a particular offender, then the release is impermissible.
2. No.
Neb. Rev. Stat. § 81-1425 (1999) was amended last year to add a requirement that the Executive Director of the Nebraska Commission on Law Enforcement and Criminal Justice review and analyze all cases involving criminal homicides committed during the past twenty-plus years. See Laws 2000 Neb. Laws LB 1008, § 3. See Neb. Rev. Stat. § 81-1425 (Cum. Supp. 2000). The study was to consider the facts of the offenses, including aggravating and mitigating circumstances, the race, gender, religion and economic status of the defendants and victims, the charges filed, and the outcome of the judicial proceedings, including the sentences. You have referred to this as the Homicide Study, and we shall do likewise.
Upon completion of the work, the report of the analysis was to be transmitted to the Governor, the Clerk of the Legislature, and the Chief Justice of the Nebraska Supreme Court. In recognition that materials within the presentence investigation reports (PSI reports) prepared pursuant to Neb. Rev. Stat. § 29-2261 (1995), would be helpful to that endeavor, the Legislature gave the Commission access to the reports under the direction and supervision of the Chief Justice of the Supreme Court. The Commission was directed to treat such information as confidential, and nothing identifying any individual was to be released by the Commission. Laws 2000, LB 1008, § 1, codified as Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2000).
You have advised that the Homicide Study included the preparation of a "narrative summary" which included details regarding each of the cases which the study investigators deemed "death eligible," which we understood to mean that the investigators concluded the crime was such that it warranted consideration for the imposition of the death penalty. The exact criteria for qualifying for inclusion in the summary is not important for our present purposes. Suffice it to say that this summary included information from PSI reports and identified the offenders to whom the information related. Members of the defense bar have reportedly expressed an interest in obtaining a copy of the narrative summary, leading you to ask whether Neb. Rev. Stat. § 29-2261 prohibits the release of any information in any form that discloses any information contained within an offender's PSI report.
A similar issue has apparently arisen with regard to "data files" prepared during the study. We take it these files also made up a portion of the working papers which formed the foundation for the final report. You have described the data files as a database which is comprised at least in part of information from the PSI reports and which would identify the offender to whom the information related. You have said that the Commission representatives who were given the task of deciding how best to accomplish the Homicide Study originally intended to have the information shared with other researchers. You ask whether the Commission may place these data files with a public archive service so that other researchers may use it to do their own studies or analyses.
 Discussion
Presentence investigation reports are accorded considerable confidentiality. According to Neb. Rev. Stat. § 29-2261 (6):
Any presentence report or psychiatric examination shall be privileged and shall not be disclosed directly or indirectly to anyone other than a judge, probation officers to whom an offender's file is duly transferred, the probation administrator or his or her designee, or others entitled by law to receive such information. The court may permit inspection of the report or examination of parts thereof by the offender or his or her attorney, or other person having a proper interest therein, whenever the court finds it is in the best interest of a particular offender. The court may allow fair opportunity for an offender to provide additional information for the court's consideration.
As noted previously, LB 1008 amended the section to give the Commission access to the PSI reports for purposes of the Homicide Study, but added that the Commission was obliged to treat the information as confidential. No information identifying a particular offender was to be released. Neb. Rev. Stat. § 29-2261(8) (Cum. Supp. 2000).
Since the legislation gave access to PSI reports in order to conduct the Homicide Study, and given the fact that the Study was to take things into account like aggravating and mitigating circumstances surrounding the crime, and the race, gender, religion and financial wherewithal of the victim and perpetrator, it was probably expected that some of the details found in the PSI reports would make their way into the final report, but in a form not associated with a particular individual. For example, the report could note the numbers of victims or perpetrators of a particular race or income range without identifying the particular persons or crime to which the data related. That the focus of the legislation's concern for confidentiality was upon the identities of the persons involved in the crimes may be seen by the concluding admonition to the Commission that it release nothing which identifies any individual. Neb. Rev. Stat. § 29-2261 (8).
A narrative summary of each case would by its very nature contain details relating to particular identified defendants. Although the victims might not be identified by name, the fact that the information set out concerning them is on a case-by-case basis would probably allow their identities to be readily determined in many instances, perhaps by simply referring to the trial court order or appellate decision. Of course, if the narrative summary included nothing from the PSI report, the mere fact that the identity of the person is revealed may not be a problem. Rather, we would understand the focus of the statutory prohibition to be the connection between the identity of the individual and the confidential information from the PSI reports. We say this because the prohibition appears within the section which gives the Commission access to those reports.
It may be that the narrative summary could be redacted to eliminate the material which came from the PSI reports. In this regard we would note that it is possible that information found in the PSI reports may also be found in other, non-confidential, sources, such as court orders and appellate opinions. It is the information found only in the PSI reports, or which one can ascertain has been derived from the PSI reports, which would be covered by the confidentiality directive.
Turning to the second part of your inquiry, the law occasionally has made provision for access to confidential information for research purposes. For example, the Department of Health and Human Services may permit access to vital records to researchers for scientific and public health purposes. Neb. Rev. Stat. §§ 71-602 (1996) and 71-612 (Cum. Supp. 2000). However, we have not found a similar provision with regard to researchers desiring access to information within the PSI reports. Although it may be that peer review of the Study would be desirable, the policy as expressed by the Legislature has weighed in favor of protecting the confidentiality of the PSI reports. Therefore, based upon your characterization of the database as including material from the PSI reports in a format which can be linked to the particular offender, it is believed that it would be inappropriate to place the database with a public archive service for the use of other researchers.
Sincerely,
 Don Stenberg Attorney General
 Mark D. Starr Assistant Attorney General